Tommie **SOWELL,** Individually and as Personal Representative of the Estate of Loniell Sowell, Deceased, Appellant,

v.

**DRESSER INDUSTRIES, INC.,**
et al., Appellees.

No. 09–92–249 CV.

Court of Appeals of Texas,
Beaumont.

Dec. 9, 1993.

Brent W. Coon, D'Juana J. Parks, Provost & Umphrey, Beaumont, for appellant.

Dale Dowell, David D. Reynard, Jr., Rienstra, Dowell & Flatten, John R. Dolezal, Weller, Wheelus & Green, Beaumont, Harvey F. Cohen, Austin, Leo Patrick Ferris, Fort Worth, Bruce A. Smith, Harbour, Kenley, Boyland, Smith & Harris, Longview, Jack R. Martin, Martin & Herring, Houston, Clay M. White, Sammons & Parker, Tyler, Vic Houston Henry, Storey, Armstrong, Steger & Martin, Dallas, Jo Ben Whittenburg, Orgain, Bell & Tucker, Thomas Walston, Barbara Jane Barron, Mehaffy & Weber, Thomas O. Moses, Lindsay, Moses & Barkley, Thomas W. Duesler, Anthony L. Latino, Adams, Coffey & Duesler, L.L.P., Beaumont, Steven Russell, Dale Markland, Vinson & Elkins, L.L.P., Dallas, for appellees.

Before WALKER, C.J., and
BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

This is an appeal from an order or judgment granting the appellees' motion for summary judgment.

The appellant, in her several capacities, filed this legal proceeding as a result of Loniell's alleged exposure to silica while in the course and scope of his employment. The appellant's husband, Loniell Sowell, died on May 16, 1988. The appellant filed this lawsuit initially, nearly three years later, on May 14, 1991.

The various defendants were favored with summary judgments based upon statutes of limitation. The appellees place major reliance on TEX.CIV.PRAC. & REM.CODE ANN. § 16.003 (Vernon 1986).

Several undisputed, cogent facts were presented to the trial court at the hearing on the motions for summary judgment. Some are:

(1) Loniell Sowell died on May 16, 1988;

(2) Suit was not filed until May 14, 1991;

(3) In August, 1984, a medical doctor explained the nature of Mr. Sowell's injuries, disease and disorders to him, being probable silicosis with its signs, symptoms and conditions resulting from significant occupational hazards and exposure to silica;

(4) Mrs. Tommie Sowell, the surviving widow did not learn of her husband's disease until receiving the autopsy report on or about June 8, 1988;

(5) No administration was had upon the estate of Loniell Sowell, deceased.

The silicosis was attributable by Dr. M.J. Thomas, a medical doctor, to silica exposure when Mr. Sowell was on the job at Lufkin Industries. Dr. Thomas so advised Loniell in 1984. Mr. Sowell experienced the same amount of shortness of breath and necessary, increased effort and intolerance since that time. He had experienced a cough on and off with mucus expectoration for years. Dr. Thomas' affidavit fairly gives real notice of the whole problem. And Dr. Thomas swore: "in spite of explaining to him the problem and from what I gather from the interview it appears that he may not be willing for any further workup". Even if there was a mere possibility of tuberculosis, Loniell Sowell had a duty to use ordinary care to either confirm or exclude that malady. But the patient refused any other tests.

Mr. Sowell had been sent to Dr. Thomas for an examination and consultation. The report of the consultation is somewhat lengthy but the last paragraph is significant:

In summary, this 59 year old male patient *whose significant occupational exposure to silica and other dust, has presented with apical lung fibrosis with paramediastinal masses and hyperinflation in the lower lobes with pulled up hilar and clinical evidence of pulmonary arterial hypertension, without any hypoxia. This picture is consistent with pneumoconiosis.* His arthralgia also will go along with the diagnosis and workup for rheumatoid factor and ANA and also serum protein electrophoresis, workup for excluding tuberculosis, are in order. *Autoimmune phenome-non and arthralgias are common in silicosis and probably that is what this gentleman has. It is surprising that this patient has a very cool and disinterested attitude about the whole problem, in spite of explaining to him the problem and from what I gather from the interview it appears that he may not be willing for any further workup like a CT scan of the chest to study the mediastinum and the blood workup and other tests to exclude tuberculosis.* It will not be permitted by the patient at this time. *His pulmonary functions already shows a severe degree of obstructive ventilatory dysfunction with a mild degree of restriction.* He has never been a smoker and this is very significant in view of *the pulmonary function abnormalities which are basically due to the underlying disease itself.* (emphasis added)

### *The Wrongful Death Claim*

The initial pleading bringing the lawsuit was not filed by Mrs. Sowell within two years of the date of Mr. Sowell's death. TEX. CIV.PRAC. & REM.CODE ANN. § 16.003 mandates that a person must bring suit not later than two years after the day the cause of action accrues in an action for injury resulting in death. Section 16.003(b) contains this mandatory sentence: "The cause of action accrues on the death of the injured person." Section 16.003 is not tolled or extended for an additional year or part thereof under TEX. CIV.PRAC. & REM.CODE ANN. § 16.062 (Vernon 1986) for the reason that under decisional law section 16.062 simply has no application to wrongful death claims. *Rascoe v. Anabtawi,* 730 S.W.2d 460 (Tex.App.—Beaumont 1987, no writ).

The summary judgment proof offered at the summary judgment hearing demonstrated that Dr. Thomas explained to Mr. Sowell in August of 1984 that Sowell had signs, symptoms and conditions common in silicosis attributable to silica exposure on the job at Lufkin Industries. Note that the doctor's affidavit is clear that the *patient had a disinterested attitude about the "whole problem".* The "whole problem" clearly included probable silicosis from exposures on the job. Cer-

tainly Sowell was put on notice at that time and the injuries and damages personal to him accrued and he had notice thereof no later than the last part of August, 1984. But Loniell had a very cool and disinterested attitude.

### The Survival of Cause of Action Claim

■ Survival of the causes of actions is regulated by TEX.CIV.PRAC. & REM.CODE ANN. § 71.021 (Vernon 1986). Section 71.021(b) provides that a personal injury action survives to and in favor of the heirs, legal representatives, and the estate of the injured person. The action, or rather the cause of action, survives against the liable person and that person's legal representatives. The survival of cause of action claims are different and distinct from wrongful death claims.

■ For wrongful death the persons benefiting therefrom and who may bring an action thereon are the surviving spouse, the children, and the parents of the deceased. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 71.004 (Vernon 1986) and *Landers v. B.F. Goodrich Company*, 369 S.W.2d 33 (Tex.1963).

Justice Ruel Walker in *Landers, supra,* of the Texas Supreme Court discusses the distinct differences between the two types of actions. There are certain statements in some of the briefs of the appellees that are not challenged. These statements are that all the parties agree that the lawsuit was not filed within two years of the date of the death of Loniell Sowell and also all parties agree that the two year statute of limitations set out in TEX.CIV.PRAC. & REM.CODE ANN. § 16.003(b) controls and governs the wrongful death claim. Each protagonist interprets this statute differently.

### The Appellant's Argument and Position on the Wrongful Death Claim

■ The appellant vigorously argues that the limitation defense fails because TEX. CIV.PRAC. & REM.CODE ANN. § 16.062 tolls and actually extends the period of limitation as set out in section 16.003 for an additional twelve months after the date of death of Sowell. The appellees candidly concede that under that scenario the wrongful death claim

would have been filed in a timely manner. Nevertheless, as pointed out above, the case law has decided that section 16.062 has no application to wrongful death claims. This section 16.062 tolls a running of limitations solely as to the cause of action that validly and legally existed in favor of the decedent prior to his death. By its plain terms, by logic and decisional law, the wrongful death action did not and could not have existed during the lifetime of Sowell. In other words, this possible twelve month extension, we think, applies to the claims that were actually possessed and owned *by the decedent during his lifetime* and the extension applies to survival actions under the survival statute but the twelve month extension does not ensue to the benefit of the surviving spouse, children, and parents. These named beneficiaries' claims arise under the wrongful death statute. Under the wrongful death statute (as distinguished from the survival of cause of action statute) the wrongful death cause of action actually belongs to the surviving spouse, children, and the parents of the deceased but not to the heirs at law or the estate of the deceased. We conclude that the wrongful death cause of action and claims thereunder are barred. Section 16.062 simply does not extend the limitations for the appellant's wrongful death claims.

■ There is an additional basis for holding that the two year statute of limitation had run against the wrongful death claim. The appropriate statute of limitation had already fully run against the decedent, Sowell, prior to the date of his death on his possible claims for injuries that eventually resulted in his death. TEX.CIV.PRAC. & REM.CODE ANN. § 71.003 (Vernon 1986). In injury and damage cases of this type, the statute of limitation commences when the injured or damaged party discovers or in the exercise of ordinary and reasonable care should have discovered the injury. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348 (Tex.1990).

■ Generally, for the purpose of construing and applying statutes of limitations, a cause of action can be said to accrue when the wrongful act effects and brings about an injury, regardless of when the plaintiff learned of such injury. This construction has

been modified by the "discovery rule". The "discovery rule" constitutes an exception to this general rule of the accrual of a cause of action. The "discovery rule" is a judicially fashioned test which is used to determine when a plaintiff's cause of action accrued to the plaintiff in certain, limited fact situations. *See Weaver v. Witt,* 561 S.W.2d 792 (Tex. 1977).

■ When applied, the discovery rule operates to toll the running of the period of limitations until the time that the plaintiff discovers, or through the exercise of reasonable care and diligence should discover his injury. Once the injured litigant discovered or in the exercise of ordinary care and diligence should have discovered his injury or merely the nature of his injury, his cause of action accrues. Dr. Thomas' consultation is set out in some detail above. We conclude that Dr. Thomas had discovered the nature of Mr. Sowell's injury and his cause of action was barred under the doctrine, ruling, and rationale of *Moreno, supra.*

In a recent case, our Supreme Court held that under the current law the Wrongful Death Statute allows an action by a decedent's statutory beneficiaries only if the individual injured would have been entitled to bring an action for the injury if he or she had lived. *Russell v. Ingersoll-Rand Co.,* 841 S.W.2d 343 (Tex.1992); TEX.CIV.PRAC. & REM. CODE ANN. § 71.003(a). In *Russell,* the Supreme Court held in substance that a right of action exists under the wrongful death statute only where the injured party could have maintained an action for damages had death not ensued. *Id.* at 347. *See and compare Leal v. C.C. Pitts Sand and Gravel, Inc.,* 419 S.W.2d 820 (Tex.1967); *Magnolia Coca Cola Bottling Co. v. Jordan,* 124 Tex. 347, 78 S.W.2d 944 (1935).

Accordingly then, the Supreme Court has determined that a wrongful death action is not allowed if the decedent could not, immediately prior to his death, have maintained an action. *Russell, supra,* 841 S.W.2d at 347.

The high court reasoned that if a wrongful death action exists, it accrues, not when the decedent was injured but rather at his death and, therefore, the limitations on that death action begins to run at death. But if, on the other hand, a wrongful death action does not exist because the decedent himself could not maintain an action in his own right immediately prior to his demise, then no wrongful death action ever accrues. Indeed, if the decedent's own cause of action happened to have been barred by limitation, or statute, or release, or *res adjudicata,* or other affirmative defenses, there simply is no wrongful death action to accrue. Hence, the Supreme Court wrote in *Russell:*

> We do not agree that section 16.003(b) must be read as an exception to section 71.003(a). Section 16.003(b) sets the time when a wrongful death action accrues, if it exists. *It does not, however, provide that there is always an action to accrue. The Wrongful Death Statute allows an action by a decedent's beneficiaries "only if the individual injured would have been entitled to bring an action for the injury if he had lived."* (emphasis added)

### *The Survival Claim Revisited*

The survival of the cause of action claims, we determine, asserted by the appellant were barred by limitations. Had Mr. Sowell, himself, brought an action for damages and injuries prior to his death; then, we perceive, that the two year statute of limitation would have been a valid defense.

■ The defenses that would have been relevant, governing and effective against a claim brought by a decedent before his demise can be effectively alleged against the decedent's heirs and the decedent's estate in a survival action claim. The survival cause of action is derivative of the rights and standing of Mr. Sowell. A careful reading of the detailed report reveals that Mr. Sowell either had actual knowledge of his silicosis or certainly in the exercise of ordinary care and diligence should have known of his injury and damages logically flowing from silicosis.

■ The survival actions, as they are generally called, are wholly derivative of the decedent's rights. This is a correct concept because the actionable wrong or wrongs are those which the decedent himself suffered and sustained while he was alive and the

damages recoverable therefrom are those which he, himself, sustained while he was alive and not different damages claimed independently by the survival action plaintiffs; except, however, that funeral expenses may also be recovered if they have not been awarded. *See Landers v. B.F. Goodrich Co.,* 369 S.W.2d 33 (Tex.1963). Very clearly then, the actual wrong and the actual cause of action is that which the decedent, Sowell, suffered before his demise. *Any recovery, therefore, obtainable flows to those parties who would have received the recovery had Loniell Sowell obtained it immediately prior to his death.* Those parties are his heirs, legal representatives and his estate. *Russell, supra.*

And defenses that could have been raised against a claim brought by the injured person himself may also be raised against the same claim or claims asserted by that person's heirs, legal representatives, and his estate. As has been pointed out above in this opinion, Loniell had actual, detailed notice of his injuries and damages and cause of action for a considerable number of years prior to his death. And, hence, any survival action based on the same alleged wrong would likewise be barred.

### *Loniell Sowell's Status and Standing— vis-a-vis the Workers' Compensation Act and Lufkin Industries, Inc.*

As an alternate ground for affirming the summary judgment adverse to the survival claims and the wrongful death claim against Lufkin Industries, Inc., it is noted that under the Texas Workers' Compensation Act art. 8306 a *worker-participant is deemed to have waived his common law causes of action against his employer.* Hence, because of the derivative character of section 71.003 the appellant is precluded from bringing suit under the survival statute because the decedent would not have been entitled to sue on such action had he lived.

The contention has been made that Tex. Civ.Prac. & Rem.Code Ann. § 71.003 and Tex.Rev.Civ.Stat.Ann. art. 8306 (Vernon 1967) are unconstitutional in that these statutes violate the open court provisions of the Texas Constitution and the equal protection guarantees of the State and Federal Constitutions. These contentions and allegations have been disallowed in the well reasoned case of *Maderazo v. Archem Co.,* 788 S.W.2d 395 (Tex.App.—Houston [14th Dist.] 1990, no writ).

### *The Defenses of Lufkin Industries, Inc.—A Subscriber*

Article 8306, § 3 of the Texas Workers Compensation Act, is entitled in relevant part, "Exclusiveness of Remedy". Section 3 mandates that the employees of a subscriber and the parents of minor employees shall have no right of action against their employer or against any agent, servant, or employee of the said employer for damages for personal injuries. Section 3(a) dictates that the representatives and beneficiaries of the deceased employee shall have no right of action against such subscribing employer or his agent, servants, or employees for damages for injuries resulting in death, but that such employees and their representatives and beneficiaries shall look solely to the association for relief in compensation. The association, of course, is the Workers Compensation insurance carrier.

Article 8306, § 3(a) is entitled "Waiver of Common Law or Statutory Right of Action". Section 3(a) of article 8306 clearly provides that an employee of a subscriber shall be held to have waived his right of action at common law or under any statute of this State to recover damages for injuries sustained in the course of his employment if he shall not have given his employer, at the time of his contract of hire, notice in writing that he—the employee—claimed such said right. If the contract of hire was made before the employer became a subscriber, and if the employee shall not have given said notice within five days of notice of such subscription and coverage under the Texas Workers Compensation Act, then such rights are waived. Loniell Sowell has not availed himself of his right to give such notice in writing.

The Texas Wrongful Death Act, Tex.Civ. Prac. & Rem.Code Ann. § 71.003 clearly provides thus:

(a) This subchapter applies only if the individual injured would have been entitled

to bring an action for the injury if he had lived.

### *The Significant Impact of Russell v. Ingersoll–Rand Co.*

In mid-October 1992, the Texas Supreme Court handed down its opinion in *Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343 (Tex. 1992). The first paragraph of the opinion is:

> If an *individual's action for personal injuries would have been barred by limitations at the time of his death*, are actions based upon the same wrongful conduct, brought by his heirs, legal representatives or estate under the *Survival Statute, TEX. CIV.PRAC. & REM.CODE § 71.021*, and by his beneficiaries under the *Wrongful Death Statute, TEX.CIV.PRAC. & REM.CODE §§ 71.-001–.011, also barred by limitations?* Both the district court and the court of appeals answered this question affirmatively. 795 S.W.2d 243. We agree. (emphasis added)

Donnon Russell had been diagnosed as suffering from chronic obstructive pulmonary disease caused by exposure to silica during his employment for many years. Donnon was a sandblaster and a painter. In 1982, Donnon filed suit to recover damages for his injuries. By amended pleadings, Donnon named a total of fourteen defendants who he alleged manufactured and distributed products containing silica that he had used on his job. Donnon became deceased in 1988 prior to his own litigation having come to trial on the merits.

About five weeks later, the widow and the four children of Donnon filed an amended petition. *The widow and the four children then named themselves as plaintiffs and they claimed damages on behalf of Donnon's estate as well as for his death. The new plaintiffs added seven new defendants whom Donnon had not sued. These new defendants were the respondents in the Supreme Court and had moved below for a summary judgment on the ground that all of the plaintiffs' claims were barred by statutes of limitation.* The new plaintiffs asserted and alleged claims based on strict liability, negligence, gross negligence, misrepresentation, and breach of warranty. The respondents' position was that all the causes of action brought against them accrued in either 1981 when Donnon's condition was diagnosed, or certainly no later than 1982 when he filed his own suit during his lifetime. The Supreme Court held that had Donnon sued the respondents immediately before his death, his claims would have been barred by limitation. The respondents in the Supreme Court contended that the plaintiffs' actions are derivative of Donnon's and are, therefore, likewise, barred. The Supreme Court agreed, as do we—an intermediate appellate court.

The several new plaintiffs contended that the statute of limitations applicable to their claims under the Survival and Wrongful Death statutes was TEX.CIV.PRAC. & REM. CODE § 16.003(b), which provided that:

> A person must bring suit not later than two years after the day the cause of action accrues in an action for injury resulting in death. The cause of action accrues on the death of the injured person.

Based then on section 16.003(b), the Russell plaintiffs argued that they had two years from Russell's death to file their claims, even if Donnon's own claims for the same injuries against these respondents would have been barred at the time he died. The Supreme Court rejected that argument. The district court below had granted summary judgment for the seven respondents and severed out their cases. The court of appeals affirmed, 795 S.W.2d 243. The Supreme Court affirmed, 841 S.W.2d 343.

The Supreme Court's opinion contains a footnote [1], the relevant part of which reads:

> More specifically, plaintiffs argue that the discovery rule operates to delay accrual of the causes of action against respondents until Russell could reasonably have determined that they were among the parties at fault. Generally, however, "limitations begin to run when the fact of injury is known", *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990), not when the alleged wrongdoers are identified. There is no question on the record before

---

1. *See id.*, 841 S.W.2d at 344, n. 3.

us that Russell's actions accrued no later than 1982, when he filed suit.

Our record is startlingly similar and parallel to Russell. Loniell Sowell suffered from disease caused by exposure to silica. This exposure was received and sustained by him while he was on his job with Lufkin Industries, Inc., according to Dr. Thomas and Loniell Sowell was so advised.

In *Russell, supra*, the Supreme Court affirmatively held that wrongful death actions are also derivative of the decedent's rights and that such wrongful death actions are creatures of statutory enactment. The Supreme Court traced the history of the Wrongful Death Statute. The Supreme Court traced the changes in the limitation periods as enacted by successive legislatures. The wording establishing the wrong death cause of action has remained, however, in substantially the same language. The present statute is section 71.003(a) of the Texas Civil Practice & Remedies Code, enacted May 17, 1985, 69th Legislature, R.S., Chapter 959, section 1, 1985, Tex.General Laws 3242, 3296. The two years limitation period has remained constant and it is now codified at TEX.CIV.PRAC. & REM.CODE § 16.003(b). The Supreme Court significantly held that currently the wrongful death statute allows an action by a decedent's beneficiaries only if the individual injured would have been entitled to bring an action for those same wrongs and injuries had he lived. TEX.CIV.PRAC. & REM.CODE § 71.003(a).

In clear language, the opinion of the Court dispatched the Russell plaintiffs' arguments and contentions with this holding: [2]

As can be seen from the history of the statute recited above, this language is not a recent innovation but merely a recodification of language which has always been part of the Wrongful Death Statute (footnote omitted). From the earlier language, it could have been argued, and in fact was, that a wrong "such as would (if death had not ensued) have entitled the party, injured, to maintain an action for such injury then" meant only a wrong of an actionable *nature*, not one for which the injured party could actually have succeeded in recover-

ing damages. In other words, the earlier language may be read to allow a decedent's beneficiaries to recover for a wrong which caused his death, even if he could not have recovered himself, as long as it was "such as would" have allowed action— that is, the *type* of wrong for which he could have recovered. *We long ago rejected this argument that the statute did not condition allowance of a wrongful death action upon the decedent's right to maintain suit for his injuries immediately prior to his death.* (emphasis theirs). (last emphasis ours).

 Hence, we conclude that a subscribing employer is exempt from all common law liability based on accidental injury caused by negligence or even gross negligence including willful negligence. *See and compare Reed Tool v. Copelin*, 610 S.W.2d 736 (Tex. 1980).

However, the protective exemption that is conferred upon subscribing employers by section 3 of article 8306 and section 3(a) of the same article is proscribed by the Texas Constitution, Art. 16, section 26. The legislature acknowledged this constitutional mandate in the passage of section 5 of article 8306. The legislature mandated the reservation of the right to seek recovery of exemplary damages in cases of intentional torts where the injuries to the employee resulted in that employee's death. *Fort Worth Elevator Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397, 408 (1934).

### The Doctrine of Election of Remedies under Massey v. Armco Steel Co.

 Thus, the Texas Workers Compensation Act does not create a bar to common law, statutory claims or death claims or constitutional claims against an employer arising from intentional torts causing injury or death. *Castleberry v. Goolsby Bldg. Corp.*, 617 S.W.2d 665, 666 (Tex.1981). An employee, however, may waive his lawful cause of action for an intentional tort if he seeks benefits under the Workers Compensation Act. *See and compare Grove Mfg. Co. v. Cardinal Const. Co.*, 534 S.W.2d 153 (Tex.

---

2. *Russell, supra*, at 346.

Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.); *Jones v. Jeffreys*, 244 S.W.2d 924 (Tex.Civ.App.—Dallas 1951, writ ref'd).

The Supreme Court wrote in *Massey v. Armco Steel Co.*, 652 S.W.2d 932 (Tex.1983):

Although the Workers' Compensation Act bars an employee's common law action for negligence against his employer, the Act does not exempt employers from common law liability for intentional torts. *Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 739 (Tex.1980); *Middleton v. Texas Power & Light Co.*, 108 Tex. 96, 185 S.W. 556, 560 (1916). An employee, however, may waive his cause of action for intentional tort if he seeks benefits under the Act. *Grove Manufacturing Co. v. Cardinal Construction Co.*, 534 S.W.2d 153, 155 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.); *Jones v. Jeffreys*, 244 S.W.2d 924, 926 (Tex.Civ.App.—Dallas 1951, writ ref'd). *The collection of workers' compensation benefits by an employee who subsequently alleges his injury was by intentional tort constitutes an election of remedies and estops the employee from proceeding to recover damages outside the Act. Porter v. Downing*, 578 S.W.2d 460, 461 (Tex.Civ. App.—Texarkana 1979, writ ref'd n.r.e.). (emphasis added).

Concededly, an employee may have one claim against his employer under the Workers' Compensation Act and a separate, distinct claim at common law for intentional tort but such claims are mutually exclusive; thus, the employee's intentional tort claim and intentional tortious actions claim must be separate from the claim for compensation and must produce independent, separate, and distinct injuries. *Id.* at 933.

We are constrained to conclude that Loniell Sowell made an effective election of remedies. Hence, the beneficiaries under the Wrongful Death Statute are precluded from subsequently engaging in a legal proceeding to recover either actual or exemplary damages based on a theory of intentional tort. *See and compare Jones v. Jeffreys*, 244 S.W.2d 924, 926 (Tex.Civ.App.—Dallas 1951, writ ref'd). Note that the writ was refused outright which then meant that the Supreme Court approved of the opinion. Thus, logi-cally, when an employee seeks and accepts workers' compensation benefits under the Act for non-fatal injuries even though they may later result in death (even when inflicted by an intentional tort)—that acceptance of the benefits constitutes an effective election of remedies and precludes that employee from bringing a subsequent cause of action against the employer seeking either actual or exemplary damages based on the commission of an intentional tort.

In addition to the effective election of remedies defense, the case against Lufkin Industries, Inc. is also subject to and precluded by the defense of limitations. Inasmuch as Loniell Sowell knew or certainly in the exercise of ordinary care should have known of his injury, its nature, and its source in 1984; then the present appellant has failed to timely file her cause of action against Lufkin Industries pursuant to TEX.CIV.PRAC. & REM. CODE ANN. § 16.003(a)(b). Our present appellant has simply failed to file timely her claims within two years of Loniell's death. Mrs. Sowell's insistence and reliance on a three year period is misplaced.

The arguments and authorities presented under the appellant's point of error number five (we respectfully observe,) simply do not sustain and support point of error number five. Point of error number five reads: "The trial court erred in holding that no cause of action for gross negligence and/or intentional acts existed as against the appellee Lufkin Industries, Inc." Under this fifth point of error, the appellee's argument is that the present appellant's cause of action was not barred as to Lufkin Industries because section 16.003 allowed and expanded the two year limitations period with an additional twelve months extension. For reasons set out above we must disagree and we overrule specifically appellant's point of error number five.

Tommie Sowell acknowledges that she knew all the facts at least by the time of the autopsy report. That post-mortem is dated 5-16-88. The appellant, Tommie Sowell, by her own pleadings has vouched for these dates. Furthermore, the autopsy report for which Tommie Sowell vouches states that the

manner of death was pulmonary fibrosis secondary to silicosis and the date that this was reported by autopsy was on 6–8–88. The dissenter indicts us for "slam dunking" Mrs. Sowell. Couldn't it be that she "slam dunked" herself? The autopsy report is in very considerable detail and lengthy. The final summary reads:

### FINAL SUMMARY

Post-mortem examination of this elderly black male revealed evidence of severe pulmonary disease which grossly strongly suggested silicosis with large confluent areas of grayish-black fibrosis and cavitation in some areas. Microscopic nodular fibrosis with anthracosis, caviation and a refactile foreign material are present again suggesting a diagnosis of silicosis.

/s/ James R. Bruce, M.D.
James R. Bruce, M.D.

Significant, important, and interesting are the harmonious findings and opinions of Drs. Thomas and Bruce.

Appellant, Tommie Sowell, does not challenge Lufkin's contention that she, herself, "has accepted and received compensation benefits as a result of the death of Loniell Sowell and thereby waived any causes of action against Lufkin Industries based on intentional torts." *Massey, supra.*

The dissent repeals TEX.CIV.PRAC. & REM. CODE ANN. § 16.003 and misconstrues § 16.-062 and overturns *Morena v. Sterling Drug, Inc., supra. Morena* held that for purposes of the application of limitation statutes a cause of action can be said to accrue when the wrongful act or acts effect an injury regardless of when the plaintiff learned of such injury. *See Robinson v. Weaver,* 550 S.W.2d 18 (Tex.1977).

■ A survival action, as it is commonly called, is wholly derivative of the decedent's rights. In like manner, wrongful death actions are also derivative of the decedent's rights. *Russell v. Ingersoll–Rand Co., supra.* Currently the Wrongful Death Statue permits an action of the decedent's beneficiaries only if the individual injured would have

been entitled to bring an action for the injury if he or she had lived. TEX.CIV.PRAC. & REM. CODE ANN. § 71.003 (Vernon 1986). In *Russell, supra,* the Court reaffirmed the case of *Wilson v. Brown,* 154 S.W. 322 (Tex.Civ. App.—Austin 1913, writ ref'd), quoting therefrom with approval this:

The authorities show that the reasonable and sound construction to be placed upon that article is that it was the intention of the Legislature to declare that, unless the deceased could, at the time of his death, have maintained an action for the injury, such right of action should not exist in favor of the beneficiaries mentioned in the statute.

In any case, the construction of Dr. Thomas' affidavit or the construction of Tommie Sowell's affidavit (or the misconstruction of them) does not bring about a reversal and remand. Above we have set out independent and distinct grounds mandating affirmance.

We have carefully examined the affidavit of the appellant and we find that it does not comply with TEX.R.CIV.P. 166(b)(c). We conclude that the matters set out in the affidavit would not be admissible before the jury.

SUMMARY JUDGMENT AFFIRMED.

BURGESS, Justice, dissenting.

I vigorously dissent. This case, in my judgment, rises or falls on the issue of when Loniell Sowell's cause of action accrued. That issue must be gleaned from the following summary judgment evidence.

From movants below, respondents here, the relevant portion of Dr. M.J. Thomas' medical records of August 18, 1984:[1]

In summary, this 59 year old male patient whose significant occupational exposure to silica and other dust, has presented with apical lung fibrosis with paramediastinal masses and hyperinflation in the lower lobes with pulled up hilar and clinical evidence of pulmonary arterial hypertension, without any hypoxia. This picture is consistent with pneumoconiosis. His arthralgia also will go along with the diagnosis and a workup for rheumatoid factor and

---

1. Also quoted in the majority opinion.

ANA and also serum protein electrophoresis, workup for excluding tuberculosis, are in order. Autoimmune phenomenon and arthralgias are common in silicosis and probably that is what this gentleman has. It is surprising that this patient has a very cool and disinterested attitude about the whole problem, in spite of explaining to him the problem and from what I gather from the interview it appears that he may not be willing for any further workup like a CT scan of the chest to study the mediastinum and the blood workup and other test to exclude tuberculosis. ....

From appellant, her affidavit:

I, Tommie G. Sowell, do hereby state under oath that there has been no administration of the Estate of Loniell Sowell. Further neither I nor my husband Loniell Sowell was aware that. Loniell Sowell had silicosis or what caused the disease. I first became aware of this information after my husband's death, when I received the results of the autopsy report.

It is from the evidence first quoted above that the majority finds this "undisputed, cogent fact(s): (3) in August, 1984, a medical doctor explained the nature of Mr. Sowell's injuries, disease and disorders to him, being probable silicosis with its signs, symptoms and conditions resulting from significant occupational hazards and exposure to silica." The majority restates this: "The silicosis was attributable by Dr. M.J. Thomas, a medical doctor, to silica exposure when Mr. Sowell was on the job at Lufkin Industries. Dr. Thomas so advised Loniell [sic] in 1984." That the majority can assert these statements as "fact", and "undisputed" at that, is nothing short of amazing. The only reference in Dr. Thomas' report is to "explaining to him the problem." Dr. Thomas makes no such forthright statements that the majority attributes to him. Dr. Thomas' report does not say that he told Mr. Sowell that Mr. Sowell had silicosis, much less that he told Mr. Sowell the silicosis was a result of silica exposure at Lufkin Industries. Yet the majority, at another instance, states: "The summary judgment proof offered at the summary judgment hearing demonstrated that Dr. Thomas explained to Mr. Sowell in August of 1984 that Sowell had signs, symptoms and conditions common in silicosis attributable to silica exposure on the job at Lufkin Industries." Further on in the majority opinion, they state: "A careful reading of the detailed report reveals that Mr. Sowell either had actual knowledge of his silicosis or certainly in the exercise of ordinary care and diligence should have known of his injury and damages logically flowing from silicosis."

Obviously the majority is suffering under the delusion that if you say it enough, it becomes fact. However, "saying it's so, don't make it so." The majority reads Dr. Thomas' report in a manner completely favorable to the movants and resolves any doubts in their favor. This turns the rules of appellate review of summary judgments entirely upside down.

Furthermore, in their zeal to affirm this summary judgment, the majority "carefully examined" her affidavit and concluded "the matters set out in the affidavit would not be admissible before the jury." What the majority fails to mention is nowhere in the record is there any objection to the affidavit. Appellees were "compelled by Rule 166a(c) and (e) of the TEX.R.CIV.P. to make an objection to the ... affidavit in writing prior to the summary judgment hearing or waive any objections." *Tag Resources v. Petroleum Well Services*, 791 S.W.2d 600, 606 (Tex. App.—Beaumont 1990, no writ). *See also, Einhorn v. LaChance*, 823 S.W.2d 405, 410 (Tex.App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.). We are not only compelled to consider Ms. Sowell's affidavit, but to accept it as true and accept all reasonable inferences as true.

The majority attempts to bring this case outside of *Wright v. Gifford–Hill & Co., Inc.*, 725 S.W.2d 712 (Tex.1987), and the explanation of *Nabours v. Longview Savings & Loan Ass'n.*, 700 S.W.2d 901 (Tex.1985), contained therein. *Wright* involved a widow suing to recover exemplary damages for the death of her husband under TEX.REV.CIV.STAT.ANN. art. 8306, § 5 (Vernon 1967). The court characterized as dicta the language in *Fort Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397 (1934), requiring recovery of actual damages under the compensation act

in order to recover exemplary damages. The court went on to hold that a plaintiff need not secure a finding on the amount of actual damages in order to recover exemplary damages under the compensation act and disapproved that portion of *Fort Worth Elevators.* The court went on to explain that the statement in *Nabours* that even in cases where actual damages are not recoverable, it is still necessary to allege, prove, and secure jury findings on actual damages is not applicable to causes arising under the exemplary damage provision of the compensation act. This explanation of *Nabours* highlights an important aspect of *Nabours.* *Nabours* acknowledges exemplary damages may be awarded in cases where actual damages exist regardless of whether the actual damages are recoverable. 700 S.W.2d at 903. Under these cases, Mrs. Sowell has her cause of action for exemplary damages against the employer(s) for the death of her husband.

In summary, Dr. Thomas' report does not unequivocally state he told Loniell Sowell about any diagnosis of silicosis, only "of explaining to him the problem." There is a doubt of what "the problem" was and to what extent it was explained. This doubt must be resolved in favor of Mrs. Sowell, the non-movant. Mrs. Sowell's affidavit is competent summary judgment evidence, no objection having been made to the trial court, therefore, it must be taken as true. Thus, it is abundantly clear the issue has been joined and a genuine issue of material fact, when did Loniell Sowell's cause of action accrue, exists. Therefore, summary judgment was not proper. Consequently, I would reverse and remand for a new trial.