Jose L. **MARTINEZ**, et ux, Appellant,

v.

**HUMBLE SAND & GRAVEL, INC., et al., Appellees.**

No. 08–95–00310–CV.

Court of Appeals of Texas, El Paso.

Nov. 21, 1996.

Rehearing Overruled Dec. 19, 1996.

Lance Bradley, Provost & Umphrey, Beaumont, for Appellant.

Paul J. Holmes, Holmes, Harris & Jeffrey, P.C., Jim I. Graves, Mehaffey & Webber, Beaumont, Steve C. Ashley, Shafer, Davis, McCollum, Ashley, O'Leary & Stoker, Inc., Odessa, Kenneth John Bower, Galveston, David M. Russell, Hinkle, Cox, Eaton, Cofield & Hensley, Amarillo, Barbara Barron, Mehaffey & Weber, J. Michael Dodson, Pate & Dodson, Beaumont, Edward J. Hennessy, Ronald T. Hancock, Nelson & Zeidman, Timothy J. Hogan, Bell & Murphy, P.C., Raymond T. Matthews, William C. Book, David Burns, Tekell, Book, Matthews & Limmer, Houston, W. Bruce Williams, Cotton, Bledsoe, Tighe & Dawson, Midland, Ryan A. Beason, Funderburk & Funderburk, Karl Van Gardner, David Brill, Hassard Bonnington, Houston, for Appellees.

Before LARSEN, McCLURE, and CHEW, JJ.

## OPINION

McCLURE, Judge.

This is a plaintiff's appeal from an adverse summary judgment. We affirm in part and reverse and remand in part.

## PROCEDURAL HISTORY

Jose Martinez filed suit on August 13, 1992, claiming he acquired silicosis, an occupational disease, due to his employment as a sandblaster. Martinez sued the defendants, who are various manufacturers and suppliers of sandblasting equipment and materials alleging negligence, strict products liability, and breach of warranty. Martinez additionally alleged conspiracy against defendants Lone Star Industries, Inc., Clemco Industries, Pauli & Griffin Company, Perma Sand Company, Inc., and The Vallen Corporation. Martinez' two children sued the defendants for loss of parental consortium. The defendants moved for summary judgment on the ground that all of the Martinez family claims were barred by the applicable statute of limitations; the defendants accused of conspiracy additionally moved for summary judgment as to the conspiracy claims on substantive grounds. The trial court granted summary judgment on limitations with regard to all of

the Martinez family claims, and on unspecified substantive grounds on the conspiracy claims. Martinez appealed, asserting the discovery rule and alleging that there is a genuine issue of material fact with regard to the date he knew or should have known of his causes of action against the defendants. Martinez does not challenge the summary judgment in favor of the conspiracy defendants on the substantive grounds.

## SUMMARY OF RELEVANT EVIDENCE

From 1978 until 1984, Martinez worked as a sandblaster for ICO, Inc., d/b/a Spincote Plastic Coating Company. He performed sandblasting work for another company, LTV, for two more years until 1986. He last did sandblasting work as a contract laborer for LTV during the month of February 1988. Martinez' brother, Florencio Martinez, was also a sandblaster and was hospitalized with silicosis in 1985. Martinez testified on deposition that in 1985, he knew his brother had silicosis and that it was caused by breathing dust during sandblasting. On September 18, 1989, Martinez filed a worker's compensation claim for "a lung disease arising out of and in the course of his employment at [sic] which has caused damage to his lungs and body generally." On the claim form, Martinez alleged the injury first manifested August 31, 1989. In his deposition, Martinez testified that he filed the claim as a "precaution" because he had "a minimum breathing problem" he associated with his work as a sandblaster. Martinez took the precaution because his brother, Florencio, had "the same illness, he was working around sand."

Martinez listed LTV as his employer at the time of his injury. LTV controverted the claim because it had no knowledge of the injury, there was no medical documentation, and because Martinez claimed February 1988 as his last exposure to the cause of the alleged injury, but had ceased full-time employment with LTV in 1986. The compensation claim was denied. Martinez delayed seeking medical treatment because the worker's compensation insurer would not pay his medical bills. Martinez was finally diagnosed with silicosis on September 23, 1991. He claims limitations was tolled until he saw a doctor in 1991. The defendants assert limitations commenced in 1989 when Martinez sought worker's compensation for occupational lung disease.

## APPLICABLE LAW

As articulated in the seminal case of *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546 (Tex.1985), the standards for appellate review of a summary judgment are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.
3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Id.* at 548–49.

■ A defendant must disprove, as a matter of law, at least one of the essential elements of each of the plaintiff's causes of action, or it must establish one or more of its defenses as a matter of law. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Bell v. Showa Denko K.K.,* 899 S.W.2d 749, 752 (Tex.App.—Amarillo 1995, writ denied). When defendants as movants rely on the affirmative defense of the running of limitations, as they do in this case, they must establish when the cause or causes of action accrued and must negate the discovery rule by proving as a matter of law that there is no genuine issue of fact about when the plaintiff discovered or should have discovered in the exercise of reasonable diligence, the elements of his cause of action, or stated another way, the nature of his injury. *Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex.1990); *Willis v. Maverick,* 760 S.W.2d 642, 646 (Tex.1988); *see also, Martinez v. Humble Sand & Gravel, Inc.,* 860 S.W.2d 467, 470 (Tex.App.—El Paso 1993), *rev'd on other grounds,* 875 S.W.2d 311 (Tex.1994). The issue in this case, therefore, is whether the defendants established their entitlement to summary judgment, as a matter of law, by conclusively proving that no genuine issue of material fact exists as to when Martinez should have dis-

covered the elements of his causes of action. *See Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983).

## LIMITATIONS IN LATENT ONSET DISEASE CASES

Section 16.003 of the Texas Civil Practice and Remedies Code provides that "a person must bring suit for ... personal injury ... not later than two years after the day the cause of action accrues." TEX.CIV.PRAC. & REM.CODE ANN. § 16.003(a)(Vernon 1986). Negligence claims normally accrue when the duty of ordinary care is breached, and strict liability claims generally accrue on the date of the injury. *Bell,* 899 S.W.2d at 753. There is a "discovery" exception to these general rules of limitations. The discovery rule provides that the limitation period for a tort claim involving an injury of which the plaintiff could not, and did not, know at the time it occurred, does not begin to run until the injury done to the plaintiff is discovered, or until the plaintiff acquires knowledge of facts which, in the exercise of reasonable diligence, would lead to the discovery of the injury. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990); *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988); *Neagle v. Nelson,* 685 S.W.2d 11, 12 (Tex.1985). It is not necessary that a party know the details of the evidence by which to establish his cause of action. It is enough that he knows a cause of action exists in his favor. When a party learns of the existence of the cause of action, the party must utilize those means which the law provides for prosecuting or preserving the claim. *Hoover v. Gregory,* 835 S.W.2d 668, 671 (Tex.App.—Dallas 1992, writ denied). Thus, the discovery rule expressly mandates that the plaintiff exercise reasonable diligence to discover facts of negligence or omission. *Willis,* 760 S.W.2d at 644. The relevant inquiry therefore is not whether a plaintiff has actual knowledge of the particulars of a cause of action, rather, it is whether the plaintiff has knowledge of facts which would cause a reasonable person to diligently make inquiry to determine his or her legal rights. *Arabian Shield Development Co. v. Hunt,* 808 S.W.2d 577, 583 (Tex. App.—Dallas 1991, writ denied); *Bell,* 899 S.W.2d at 754.

While it may be a simple matter to determine when a plaintiff actually knew that he or she was afflicted with an occupational disease, application of the discovery rule standard is complicated in cases such as this because onset of disease or symptoms may not occur until months or even years after exposure. Almost fifty years ago, the United States Supreme Court considered this question in *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), a silicosis case. The Court, considering application of limitations under the Federal Employers' Liability and Boiler Inspection Acts in existence at the time, reasoned that in occupational disease cases, "no specific date of contact with the harmful substance can be charged with being the date of injury, inasmuch as the injurious consequences of the exposure are the product of a period of time rather than a point of time; consequently the afflicted employee can be held to be 'injured' only when the accumulated effects of the deleterious substance manifest themselves...." *Urie v. Thompson,* 337 U.S. at 170 69 S.Ct. at 1025, 93 L.Ed. at 1293, *quoting Associated Indem. Corp. v. Industrial Accident Commission,* 124 Cal.App. 378, 381, 12 P.2d 1075. Holding otherwise, according to the Court's reasoning, would attach harsh consequences to "blameless ignorance." *Urie,* 337 U.S. at 170, 69 S.Ct. at 1024.

Thus, it has long been held that a party cannot be charged with knowledge of a latent-onset occupational disease at least until the disease begins to manifest itself. Some occupational diseases, such as the one in question here, however, are progressive. That is, the disease does not cause permanent disability at onset. Rather, the disease progressively deteriorates the patient's health. Onset of the first symptoms may clearly indicate the start of permanent occupational disease if viewed in hindsight, but does not necessarily equate the same knowledge when viewed from the perspective of the time the symptoms began to appear. The progressive nature of occupational diseases thus suggests another important question: how long after symptoms first manifest can a party remain "blamelessly ignorant" of his affliction with a permanently disabling

occupational disease as opposed to affliction with a mere temporary condition?

■ Texas courts apply the discovery rule in terms of when the plaintiff discovered or should have discovered the *nature* of the injury. [Emphasis added]. *Burns,* 786 S.W.2d at 267; *Weaver v. Witt,* 561 S.W.2d 792, 794 (Tex.1977); *Naugle v. Theard,* 917 S.W.2d 287, 291 (Tex.App.—El Paso 1995, writ denied); *Krueger v. Gol,* 787 S.W.2d 138, 140 (Tex.App.—Houston [14th Dist.] 1990, writ denied). We believe that discovery of the "nature" of an injury resulting from a progressive occupational disease must include knowledge sufficient to determine whether the injury is a temporary sickness or a permanent condition. We do not believe that the discovery rule should be applied in a manner which would require one to file an action for temporary sickness or discomfort or risk the loss of a right of action for permanent injury. We therefore find that when a party seeks damages for permanent, disabling injuries, the requisite knowledge for discovery rule purposes should be tied to a date the party, without benefit of hindsight, should reasonably have become aware of the permanent nature of his disease. For example, to require that a sandblaster, who may be aware that silicosis can be related to sandblasting, file a lawsuit at the first sign of a cough in order to protect his rights in the event that he has actually contracted the debilitating lung disease, would be to encourage lawsuits based upon unconfirmed fear. *See Casarez v. NME Hospitals, Inc.,* 883 S.W.2d 360, 366 (Tex.App.—El Paso 1994, writ dism'd by agr.). This type of lawsuit might never be filed if at risk individuals knew they would not jeopardize their claims by waiting until they are assured that the trouble is actually diagnosed as a permanently disabling occupational disease. *See e.g., Id.,* 883 S.W.2d at 366. This is not to say

that a diagnosis is necessary in all cases to start limitations running. If, for further example, our sandblaster were actually afflicted with silicosis, but delayed seeking diagnosis or treatment despite persistent symptoms, his inaction at some point would become unreasonable, rather than blameless, ignorance. *See id; Sowell v. Dresser Industries, Inc.,* 866 S.W.2d 803, 806 (Tex.App.—Beaumont 1993, writ denied).

■ Our discovery rule analysis in an occupational disease case therefore is two-fold. First, when did the disease begin to manifest itself through recognizable symptoms? Second, when did those symptoms become such that a reasonable person, in the exercise of reasonable diligence, would have understood that the disease is permanent? *See Srite v. Owens–Illinois, Inc.,* 870 S.W.2d 556, 564 (Tex.App.—Houston [1st Dist.] 1993), *rev'd in part on other grounds,* 897 S.W.2d 765 (Tex.1995)(calculation of prejudgment interest). There are few Texas cases considering the reasonableness of an occupational disease plaintiff's delay in seeking a diagnosis or filing a lawsuit after the onset of symptoms. In *Sowell,* the Beaumont Court found that the plaintiff failed to act diligently in discovering silicosis as a matter of law. The court based its decision on the ill man's unexplained refusal to submit to further tests after a doctor's diagnosis of possible silicosis or tuberculosis. *Sowell,* 866 S.W.2d at 806. The Texarkana Court, on the other hand, found that the plaintiff's *acknowledged* symptoms and a diagnosis of asbestosis did not time bar the plaintiff's cause of action as a matter of law where the plaintiff denied receiving the diagnosis. *Fibreboard Corp. v. Pool,* 813 S.W.2d 658, 679 (Tex.App.—Texarkana 1991, writ granted; order withdrawn), *cert. denied,* 509 U.S. 923, 113 S.Ct. 3037, 125 L.Ed.2d 724 (1993).[1]

---

1. We find further helpful guidance by example in the following occupational disease summary judgment cases from other jurisdictions having discovery rules similar to that used in Texas: *White v. Owens–Corning Fiberglas Corp., et. al.,* 447 Pa.Super. 5, 668 A.2d 136, 145 (1995)(initial shortness of breath, which could have been associated with any number of other maladies, did not constitute a discernable physical symptom of asbestos-related disease as a matter of law until plaintiff began to have difficulties walking more

than a half a block, climbing a flight of stairs, and washing dishes); *Reasons v. Union Pacific Railroad Company,* 886 S.W.2d 104, 106 (Mo. App. E.D.1994)(plaintiff not unreasonable as a matter of law in delaying diagnosis and discovering permanent occupational asthma after onset of symptoms where plaintiff had a long history of allergies, bronchitis and sinus problems; a fact issue existed regarding whether plaintiff reasonably believed exposure to dust at work merely

■ While a firm diagnosis from a physician will undoubtedly start the limitations period running, we do not agree that nothing short of a positive diagnosis by a physician will have that effect. On the other hand, we do not find that mere onset of symptoms will necessarily end a party's "blameless ignorance" of a permanent occupational condition. Whether any given plaintiff acted reasonably and promptly in seeking a diagnosis of any untoward condition which is later confirmed medically as a permanent occupational disease is a function of the particular facts and circumstances of each case. The issue may prove to be a factual one, often involving credibility of the plaintiff's explanation for any delay, best left to the jury.

## MARTINEZ' INDIVIDUAL CLAIMS

■ In his first point of error, Martinez alleges that his silicosis claim was not time barred and the trial court therefore erred in granting summary judgment on the basis of limitations.[2] In his second point of error, he alleges that a fact issue existed as to when he should have known he had a silica-related condition. We will discuss both points together. The defendants suggest that the evidence outlined above, particularly Martinez' testimony that he retained an attorney and filed a worker's compensation claim "as a precaution" because he felt he had the same symptoms as his brother, who had been diagnosed with work-related silicosis, shows that Martinez had "knowledge of facts which would cause a reasonable person to diligently make inquiry to determine his or her legal rights." *See Bell,* 899 S.W.2d at 754; *Arabian Shield Development Co,* 808 S.W.2d at 583; *Martinez,* 860 S.W.2d at 470. They thus conclude that Martinez had the requisite knowledge no later than September 13, 1989, the date of his compensation filing.

Martinez alleges that the evidence is controverted as to when he knew he was injured and associated the injury with his work. He cites the following passages from his deposition and argues that they create a factual dispute on the issue of his knowledge of the injury and its cause at the time he filed his worker's compensation claim:

A: Just for precaution because I started feeling breathing symptoms. Just—small symptoms. It didn't prevent me from working. I continued working. What I did, I just filed that claim just for precautions. I didn't know I was ill.

. . .

A: The work that I've done the most is sandblast. Blasting. And I'm not sure if that's what affected me or not.

Q: Do you believe that sandblasting damaged your lungs?

A: I wouldn't be able to tell you.

. . .

A: I didn't have any severe symptoms, but I—that I thought. I just—I just thought I was tired because of the same work I was doing.

. . .

Q: How did you know that Florencio had silicosis?

A: Because I was in the hospital.

Q: Did you know because he told you?

A: First I didn't know what he had. He told me later on. But when he mentioned silicosis, I never thought that it was an illness, I thought it was an allergy that he was—that was affecting him. What I'm trying to say, I didn't know what silicosis was.

aggravated existing conditions rather than caused additional permanent damage); *Layton v. Watts Corp.* 498 So.2d 23, 25–26 (La.App. 5 Cir.1986)(unsophisticated heavy emphysema and tuberculosis); *Copeland v. Armstrong Cork Co.,* 447 So.2d 922, 925 (Fla.App. 3 Dist.1984), *approved in part, quashed in part on other grounds,* 471 So.2d 533 (Fla.1985)(plaintiff's reliance on incorrect initial diagnosis of non-work-related pneumonia and emphysema was not unreasonable as a matter of law).

2. Martinez failed to attack the summary judgment granted on the substantive grounds on his conspiracy claims and thus has waived this question. *Belcher v. Belcher,* 808 S.W.2d 202, 206 (Tex.App.—El Paso 1991, no writ); Tex.R.App.P. 74.

In accordance with the standard we have enunciated, the record reflects that Martinez was a 33–year–old nonsmoker with no family history of asthma, bronchitis, or emphysema. In 1983, he had a chest x-ray for immigration purposes and at that time, the x-ray was reported as "normal." He noticed a "minimum breathing problem" and in his compensation claim, noted that the first manifestation of the breathing problem occurred on August 31, 1989. The claim form further reflects the inquiry, "Were you sent to a doctor or hospital by your employer or his insurance company?" to which Martinez answered, "No." He did not see a doctor at that time because the symptoms "weren't very severe. They weren't strong. I had a little bit of shortness of breath, but I thought it was just because of the same work I was doing." On December 19 of that year, the employer filed a notice of controversion of his right to compensation, claiming there was no medical documentation of an occupational injury. Martinez testified that because he could not pay for medical treatment and because the insurance company refused to pay, he was not able to see a doctor until September 1990, when he visited Dr. Steven Wiesenfeld. Specifically, Martinez testified:

> None of the insurance companies wanted to cover the doctors' bills. So as time went by, I believe it was 1990, my attorney sent me to see Dr. Wiesenfeld. He did some tests on me—he ran some tests on me, and he told me there was—I did have something, but—but I needed to have a lung biopsy to be able to determine exactly what was wrong. And we continued having all the problems with the insurance companies, since they didn't want to pay the bills. Until September the 20th or the 21st, something like that, somewhere around there. And a few days prior to that my attorney—I received a phone call from my attorney and he told me to go see Dr. Wiesenfeld to be able to get information from him where that biopsy would be performed and who would be performing it. Then on September 20th, in Dallas ... 1991. It was in Dallas, Texas, where they performed the biopsy. I came back to Odessa on October the 7th, 1991, and that's when I was notified that my case was a silicosis case.

Nowhere in the record does it appear that defendants controverted this testimony concerning Martinez' financial inability to pursue medical testing until September 1990. Dr. Wiesenfeld conducted a sputum test in September 1990 which revealed negative results; he then recommended a lung biopsy for further investigation. He also conducted spirometry and complete pulmonary function studies which were repeated a year later by Dr. Joseph Viroslav of Southwest Pulmonary Associates in Dallas. The results had not changed during the one-year interval. Dr. Viroslav stated that Martinez had a decrease in the total lung capacity and a 50 percent decrease in vital capacity by September 1991. A chest x-ray conducted at that time revealed confluent infiltrates. Because of Dr. Viroslav's assessment that Martinez had significant industrial exposure sufficient to cause occupational lung disease, he scheduled him for a bronchoscopy on September 20, 1991. Dr. Viroslav then reported to Dr. Wiesenfeld by letter dated September 23, 1991:

> The transbronchial biopsy on Mr. Martinez revealed peribronchial fibrosis consistent with pneumoconiosis but there were no fibers in the polarizing microscope that will guarantee that the patient has silicosis. I feel that the clinical exposure during sand blasting and a previous clear chest x-ray during his immigration proceedings indicate that this is probably dust pneumoconiosis or silicosis.
>
> Again, I need to re-emphasize that his disease is severe enough that it has decreased his vital capacity to around 50% and is totally related to his peribronchial fibrosis.

Martinez indicated he received the final diagnosis on October 7, 1991. As late as November 1, 1991, defendants were still contending there was no medical documentation. As we have noted, Martinez filed suit on August 13, 1992.

■ A broad application of the discovery rule would lead us to the conclusion that the statute of limitations began to run in the fall of 1991 when a final diagnosis of silicosis was

made by Dr. Viroslav. A narrower construction would suggest that Martinez should have had sufficient facts within his knowledge which would cause a reasonable person to diligently make inquiry to determine his legal rights as of September 1990 when Dr. Wiesenfeld instructed him that a lung biopsy was necessary to determine the extent of his injuries. Under either of these applications, suit was timely, having been filed on August 13, 1992. However, the defendants urge an even more restrictive application of the discovery rule, citing to this Court's earlier opinion in *Martinez v. Humble Sand & Gravel, Inc.*, 860 S.W.2d 467 (Tex.App.—El Paso 1993), *rev'd on other grounds*, 875 S.W.2d 311 (Tex.1994)[3]. They allege that because of the compensation claim alleging an occupational injury, as a matter of law Martinez had sufficient knowledge or notice of his injury and its possible cause as of the date the claim was filed. We disagree.

In *Martinez*, Florencio Martinez was diagnosed with silicosis in October 7, 1985. He filed a compensation claim on October 16 of that year, alleging "repetitious trauma, causing the injury to my lungs & body [in] general." *Id.* at 472. He filed suit in June 1988 alleging a variety of claims, including negligence, products liability, and breach of warranty. He appealed the summary judgment which was granted on limitations. In affirming, this Court concluded that his tort causes of action accrued *no later* than October 16, the date of the compensation claim. The critical distinction between the claims of these stricken brothers is that Florencio Martinez had a firm diagnosis of silicosis *before* he filed his compensation claim.

We conclude that the mere filing of the compensation claim alleging an occupational injury does not as a matter of law establish that Martinez had sufficient knowledge or notice of his injury and its possible cause as of the date the claim was filed. Here, Martinez' claim was originally filed as a precaution; it was denied because he lacked medical documentation for his assertions. Initial pulmonary testing revealed no clear diagnosis, and despite a one-year delay, repeats of those tests did not show significant change.

Diagnosis came with the biopsy results, results which were delayed because of an immigrant worker's financial stress. With regard to his tort claims, Martinez has presented genuine issues of material fact as to when he should have discovered the nature of his injury, an inquiry appropriately made by a jury. We sustain Points of Error Nos. One and Two insofar as they pertain to the negligence and products liability theories.

## BREACH OF WARRANTY

 With regard to Martinez' breach of warranty causes, Section 2.725 of the Texas Business and Commerce Code provides that a claim for breach of warranty must be commenced within four years after the cause of action has "accrued." Section 2.725(b) specifically states that:

> (b) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Tex.Bus. & Com.Code Ann. § 2.725(b)(Vernon 1994). The summary judgment evidence in this case does not include any warranty that "explicitly extends to future performance." Thus, Martinez' causes of action for breach of warranty, express or implied, accrued on the date the relevant products were delivered to Martinez' employer and he had to commence suit within four years of that date. *See Southerland v. Northeast Datsun, Inc.*, 659 S.W.2d 889, 892 (Tex.App.—El Paso 1983, no writ). The discovery rule does not apply to claims based on breach of warranty. *Southerland*, 659 S.W.2d at 892. In this case, the summary judgment evidence establishes that Martinez last worked as a sandblaster in February of 1988. Martinez therefore could not have come in contact with, or been injured by, any product delivered after February 29, 1988. Martinez' breach of warranty claims could accrue no later than that

---

**3.** This earlier case arose from silicosis claims filed by Florencio Martinez, Appellant's brother.

date. Martinez' suit, filed on August 13, 1992, was six months too late to fall within the four-year statute of limitations for warranty causes of action. Accordingly, we overrule the first and second points of error to the extent they address the breach of warranty claims.

## THE MARTINEZ CHILDREN'S CLAIMS

■ In the third point of error, Martinez' two children challenge the summary judgment against them on their parental consortium claims. The Supreme Court recognized a cause of action for loss of parental consortium in *Reagan v. Vaughn,* 804 S.W.2d 463 (Tex.1990). In *Reagan,* the Supreme Court stated that "the cause of action for loss of parental consortium ... is a derivative cause of action. As such, the defenses which bar all or part of the injured parent's recovery have the same effect on the child's recovery." *Reagan,* 804 S.W.2d at 468. As derivative causes of action, the Martinez children's loss of parental consortium claims would be extinguished by limitations along with their father's causes of action were we to affirm the summary judgment on Martinez' tort claims. *See Upjohn Co. v. Freeman,* 885 S.W.2d 538, 541 (Tex.App.—Dallas 1994, writ denied)(parental consortium extinguished by expiration of the statute of limitations on the injured parent's personal injury claim); *Work v. Duval,* 809 S.W.2d 351, 354 (Tex.App.—Houston [14th Dist.] 1991, no writ)(minor child's parental consortium claim extinguished when limitations ran on parent's claim). Because we have sustained Martinez' claims that limitations did not bar his negligence and products liability causes of action, we must accordingly sustain Point of Error No. Three as to the children's loss of parental consortium.

## CONCLUSION

We affirm the summary judgment to the extent it involves the conspiracy and breach of warranty claims. We reverse and remand on Martinez' remaining tort theories and on the children's claims for loss of parental consortium.