In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00217-CV

_____

DIMPLES JONES AND DARREL L. JONES SR., INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF DAYLEN JONES, Appellants

V.

PAUL E. WRIGHT JR. AND PATRICIA D. WRIGHT, Appellees

On Appeal from the 75th District Court
Liberty County, Texas
Trial Cause No. CV1915048

## OPINION

The underlying litigation arises from an auto pedestrian accident that killed Dimples Jones and Darrel L. Jones Sr.'s minor child, Daylen (collectively, "the Joneses").[1] In one issue, the Joneses appeal the trial court's summary judgment in

---

[1]For purposes of clarity, when referring to the parties individually, we use their first names.

favor of Paul E. Wright Jr. and Patricia Wright (collectively, "the Wrights"). As discussed below, we will affirm the trial court's judgment.

## I. Background

### A. Facts[2]

In December 2018, Daylen was killed when a truck driven by Barbara Jean Herndon hit him as the Joneses walked across Farm to Market Road FM 1960 after visiting the Wrights' property. The Wrights' property is bordered by FM 1960 to the north and County Road 612 to the west. At that location, FM 1960 is a two-lane road, with one lane going east and one going west.

For years, the Wrights have set up various Christmas light displays known as "Wrights' Lights" and allowed people to walk their property to view the lights free of charge. The Wrights put the displays up themselves and do not have any employees or hire people to help. Wrights' Lights is not a business enterprise, and the only money received is from local sponsors who provide funds to supply free candy canes to the visitors.

On the night of the accident, the Joneses were traveling westbound on FM 1960 and saw the Christmas lights to their left and cars parked on both sides of the road, so Dimples asked Darrel to stop to look at the lights. They parked on the

---

[2]The factual background is taken primarily from the Joneses' and Wrights' deposition testimony.

shoulder of the north side of FM 1960, and Wrights' Lights was located on the south side of FM 1960, so the Joneses had to walk across FM 1960.

When they arrived around 7:00 p.m., it was dark outside. Both Dimples and Darrel testified that nobody needed to tell them to use caution when crossing the road. The Joneses watched for traffic in either direction before crossing and made it safely across to view the lights. The parties agreed that the Wrights did not charge an admission fee, and the Joneses "went in and followed the crowd." The Joneses stayed twenty to twenty-five minutes.

As they left, the Joneses prepared to cross FM 1960 to return to their parked car on the north side of the road. Dimples and Darrel testified that they looked both ways and did not see any cars coming on FM 1960, so they crossed the road. There were four or five other people who were crossing at the same time but further down. The evidence established that Dimples was in the front with Daylen a few steps behind her, and Darrel was a few steps behind Daylen. Darrel testified that Dimples made it safely across the road, but a dark-colored truck driven by Herndon "came out of nowhere" and hit Daylen. The Joneses explained that they did not believe the truck had its lights on or they would have seen it. Dimples testified they never would have crossed the road if they had seen a vehicle coming. Daylen was airlifted to a hospital, but he died before his parents arrived.

3

The Wrights both testified that they did not own the roadway and had no control over FM 1960. Paul explained that they previously asked for law enforcement agencies to assist with traffic control in that area, but they were told no officers could be spared. Patricia testified she thought that they had a voiceover playing over their speakers telling people to try not to park on the other side of FM 1960 and to be careful, because it is dangerous to cross the road. The Wrights testified that no similar accidents had occurred before or since Daylen was hit. After the accident, the State put "No Parking" signs up along FM 1960, and when people ignored those signs, the State put up barricades to prevent people from parking beside the road.

The Joneses sued the Wrights, asserting causes of action for survival, wrongful death, and negligence. The Joneses alleged that the Wrights owed them a "duty of care as an invitee" and "breached [their] duty to Decedent by failing to abate or warn the Decedent of a known hazard on the premises" and that "failure to exercise ordinary care proximately caused the Decedent's injuries/death." The Wrights answered and later moved to designate Herndon and the Joneses as responsible third parties.

**B. Motion for Summary Judgment, Response, and Evidence**

The Wrights filed a Motion for Summary Judgment as to all claims. In their Motion for Summary Judgment, the Wrights argued that they did not own or control

4

FM 1960 where the accident occurred, so the Joneses could not establish they were negligent on a premises liability claim. Specifically, the Wrights contended they did not owe a duty to the Joneses, and none of the four recognized exceptions to the general no-duty rule applied. The Wrights' evidence in support of their Motion for Summary Judgment included deposition testimony of Dimples, Darrel, Patricia, and Paul.

In their Response to Defendants' Motion for Summary Judgment, the Joneses noted that the facts were "not much in dispute" but asserted the Wrights owed them a duty. The Joneses countered that an exception to the general no-duty rule permits liability to be imposed on an adjacent owner as to non-owned premises when that owner creates a dangerous condition. Particularly, they argued that when one releases "an agency that becomes dangerous by its very nature upon the highway," then premises liability will follow off the premises and onto the highway. The Joneses claimed that they and the other visitors to Wrights' Lights were the dangerous condition released upon the roadway. In their Response, the Joneses also relied on the deposition testimony of Dimples, Darrel, Patricia, and Paul along with an aerial photograph showing the Wrights' property location and where the Joneses parked.

In their Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment, the Wrights reiterated their position that they did not owe a duty to the

5

Joneses based on Texas case law. According to the Wrights, Texas law consistently holds a property owner generally has no duty to ensure the safety of people who leave the property of another and are injured on an adjacent roadway absent four enumerated exceptions, which the Wrights argued did not apply to the auto-pedestrian collision resulting in Daylen's death.

The trial court granted the Wrights' Motion for Summary Judgment.

## II. Standard of Review

We review a trial court's decision to grant summary judgment *de novo*. *See Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015) (citation omitted). We view the evidence in the light most favorable to the nonmovant. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)). In doing so, we indulge every reasonable inference and resolve any doubts against the motion. *See City of Keller*, 168 S.W.3d at 824. "Undisputed evidence may be conclusive of the absence of a material fact issue, but only if reasonable people could not differ in their conclusions as to that evidence." *Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) (citation omitted).

A party moving for traditional summary judgment has the burden of establishing there is no genuine issue of material fact as to at least one requisite element of the asserted cause of action and that it is entitled to judgment as a matter

6

of law.[3] *See* Tex. R. Civ. P. 166a(c); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017) (citations omitted). With a traditional motion for summary judgment, only if the movant meets their burden of conclusively negating an essential element of a cause of action does the burden shift to the non-movant to present evidence raising a genuine issue of material fact. *See Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 514 (Tex. 2022) (citations omitted). When the underlying facts are undisputed, the analysis becomes a question of law for the judge; however, if the facts are disputed, it is a question for the trier of fact. *See Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 518 (Tex. 1997).

### III. Analysis

In their sole issue, the Joneses ask whether the trial court erred in granting the Wrights' Motion for Summary Judgment and specifically assert that the Wrights owed them a duty as an exception to the general no-duty rule applies, specifically that the Wrights created a dangerous condition by releasing a crowd onto the roadway. In other words, the Joneses claim that these crowds crossing FM 1960 were

---

[3]The Wrights did not specify that they filed a traditional motion, but the substance of the motion and attached evidence indicates that they were conclusively negating a requisite element of the Joneses' negligence cause of action. *See* Tex. R. Civ. P. 166a(c) (setting forth standard for traditional summary judgment). Therefore, we will analyze this as a traditional Motion for Summary Judgment. *See id.*; *see also Rodgers v. Weatherspoon*, 141 S.W.3d 342, 344 (Tex. App.—Dallas 2004, no pet.) (noting that appellate court must determine whether the motion is a traditional or no-evidence motion so it can review it under the proper standards).

a dangerous condition, which proximately caused the death of their son, Daylen. Alternatively, they urge us to adopt a new exception to the general no-duty rule. The Wrights argue that the trial court properly granted their Motion for Summary Judgment, because they did not owe the Joneses a duty as they crossed FM 1960 to return to their parked car, and no recognized exception applies to the general rule that adjacent property owners owe no duty to protect individuals using a public roadway.

## A. Law and Elements of Cause of Action

To bring a negligence action in Texas, a plaintiff must establish: (1) one party owed the other a legal duty; (2) a breach of that duty; and (3) damages proximately caused by the breach. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009) (citation omitted). "The threshold inquiry in a negligence case is whether the defendant owes a legal duty to the plaintiff." *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995) (citation omitted). The existence of a duty is generally a question of law for the court, although in some instances it may require the resolution of disputed facts or inferences by the finder of fact. *Nabors*, 288 S.W.3d at 404 (citing *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex. 1991)).

Survival and wrongful death causes of action are wholly derivative of the decedent's causes of action. *See Russell v. Ingersoll-Rand Co.*, 841 S.W.2d 343,

8

345–46 (Tex. 1992); *Sowell v. Dresser Indus., Inc.*, 866 S.W.2d 803, 813 (Tex. App.—Beaumont 1993, writ denied). For survival and wrongful death causes of action to be viable, the decedent must have had viable causes of action at death. *See Sowell*, 866 S.W.2d at 813. In other words, the Joneses, as the decedent's beneficiaries, could pursue their claims only if Daylen would have been entitled to pursue a claim for his injury if he had lived. *See id.* Therefore, if the Wrights did not owe the Joneses a duty, a requisite element of their negligence claim, then Daylen would not have had a viable cause of action at death. *See id.*; *see also Russell*, 841 S.W.2d at 346.

**B. No-Duty Rule and Four Recognized Exceptions for Premises Owners**

A premises owner or occupier's duty to provide protection arises from control of the premises and does not extend beyond the limits of the premises owner or occupier's control. *Dixon v. Hous. Raceway Park, Inc.*, 874 S.W.2d 760, 762 (Tex. App.—Houston [1st Dist.] 1994, no writ) (citations omitted); *see also Cabrera v. Spring Ho Festival, Inc.*, No. 03-09-00384-CV, 2010 WL 3271729, at *3 (Tex. App.—Austin 2010, no pet.) (mem. op.). Ordinarily, a person who does not own, occupy, or otherwise control real property cannot be held liable for a dangerous condition thereon. *City of Denton v. Page*, 701 S.W.2d 831, 835 (Tex. 1986); *Cabrera*, 2010 WL 3271729, at *3. Consistent with this principle, "[a]n owner or occupier of property is not an insurer of the safety of travelers on an adjacent

9

highway and is not required to provide against the acts of third persons." *Dixon*, 874 S.W.2d at 762–63 (citing *Naumann v. Windsor Gympsom, Inc.*, 749 S.W.2d 189, 191 (Tex. App.—San Antonio 1988, writ denied)).

There are four recognized "assumed duty" exceptions to the general rule that a property owner owes no duty to prevent accidents on adjacent property that he does not own or occupy. *See Hirabayashi v. North Main Bar-B-Q*, 977 S.W.2d 704, 707–08 (Tex. App.—Fort Worth 1998, pet. denied). First, a person who expressly or impliedly agrees or contracts to make safe a known, dangerous condition of real property may be held liable for the failure to remedy the condition. *See id.*; *see also Page,* 701 S.W.2d at 835. Second, a person who created a dangerous condition may be liable even if they do not control the premises when the injury occurred. *See Page*, 701 S.W.2d at 835; *Hirabayashi*, 977 S.W.2d at 707. Third, a lessee who assumes actual control over a portion of adjacent property not included in a lease also assumes legal responsibility for that adjacent portion. *See Wal–Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 324 (Tex. 1993); *Hirabayashi*, 977 S.W.2d at 707. Fourth, where an obscured danger exists on land directly appurtenant to the land owned or occupied and near where invitees enter and exit the landowner's or occupier's property, the owner or occupier owes a duty to those invitees entering and exiting to warn of the danger. *See Renfro Drug Co. v. Lewis*, 235 S.W.2d 609,

10

615 (Tex. 1950); *Hirabayashi*, 977 S.W.2d at 707; *Parking, Inc. v. Dalrymple*, 375 S.W.2d 758, 762 (Tex. Civ. App.—San Antonio 1964, no writ).

Once the Wrights conclusively established that they owed no duty by presenting evidence Daylen was killed on a public roadway they did not control by a driver they likewise did not control, it was the Joneses' responsibility to present more than a scintilla of evidence to contradict this, which they failed to do. *See* Tex. R. Civ. P. 166a(c) (summary judgment standard); *Energen Res. Corp.*, 642 S.W.3d at 514; *Cabrera*, 2010 WL 3271729, at *4 (discussing nonmovant's burden to create genuine issue of material fact once traditional summary judgment movant conclusively negated duty).

However, the Joneses assert that the second exception applies, and they claim that the issue on appeal is whether the Wrights owed a legal duty to the Joneses by creating a dangerous condition on the roadway by releasing a crowd. *See Nabors Drilling*, 288 S.W.3d at 404; *Page*, 701 S.W.2d at 835; *Hirabayashi*, 977 S.W.2d at 707. We disagree. It is undisputed Daylen was killed by a vehicle driven by a third party the Wrights did not control on FM 1960 that the Wrights did not own. There is no evidence showing that the Wrights "released" a crowd or that a crowd killed Daylen; rather the summary judgment evidence shows that the Joneses chose how long to stay at Wrights' Lights and decided when, where, and how to cross the road. *See Hirabayashi*, 977 S.W.2d at 707 (determining dangerous condition exception

11

did not apply because there was no summary judgment proof the premise owner released a dangerous agency onto the roadway); *Guereque v. Thompson*, 953 S.W.2d 458, 468 (Tex. App.—El Paso 1997, writ denied) (reasoning that "creation of the hazard exception" did not apply because the fence argued to be the dangerous condition did not cause the child's death, rather the child drowned in a canal some sixty feet beyond the fence); *Dixon*, 874 S.W.2d at 763 (determining that exception did not apply as defendant did not release a dangerous agency onto a roadway where driver was killed in a collision on a public road as vehicle attempted to turn into defendant's premises); *see also Cabrera*, 2010 WL 3271729, at *4 (addressing argument that festival crowd operated as a dangerous condition released upon roadway and concluding exception did not apply in traditional summary judgment context when movants conclusively established they did not control the roadway where the accident occurred and nonmovants failed to present evidence that the movants released a dangerous agency).

In addition, the evidence conclusively proves that Daylen was not with a crowd when he was hit by Herndon's truck. Furthermore, Daylen and his parents were not released onto the roadway by the Wrights. Therefore, the exception to the no-duty rule the Joneses relied on in the trial court and on appeal does not apply. The summary judgment evidence before us shows the Joneses decided when to leave the Wrights' property. Based on where they had parked, the Joneses knew they would

need to cross a road. They also knew that before they crossed, they would need to look for oncoming traffic. The evidence also shows the Joneses did not see Herndon's truck approaching them when they were crossing the highway and they testified that Herndon was driving her truck without lights. The summary judgment evidence shows Herndon was not the agent, servant, or employee of the Wrights, and the Wrights had no control over how Herndon operated her truck on a public road.

While there was some evidence that other individuals crossed the road farther down at the same time as the Joneses, the Joneses presented no evidence that the Wrights "released" any of the people who crossed the road and there was no evidence that "the pedestrians constituted 'an agency that becomes dangerous by its very nature' once upon the roadway." *See Cabrera*, 2010 WL 3271729, at \*4 (quoting *Hirabayashi*, 977 S.W.2d at 707). Rather, the evidence indicated the Joneses and others came and went as they pleased, and the alleged dangerous condition, the releasing of a crowd, did not exist. Furthermore, the actual cause of Daylen's death was being struck by a vehicle while crossing a public roadway and the driver operating a vehicle in the dark without headlights. *See id.* The Joneses failed to present more than a scintilla of evidence that the Wrights released a "crowd" onto FM 1960. Therefore, we conclude the dangerous condition exception to the general no-duty rule does not apply.

## C. Alternative Argument: New Exception and Balancing Factors

Alternatively, the Joneses advocate for the recognition of a new exception to the general no-duty rule for crowds originating from an owner's premises released onto a roadway. "'When a duty has not [already] been recognized in particular circumstances, the question is whether one should be.'" *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 145 (Tex. 2022) (quoting *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 506 (Tex. 2017)). Courts balance several considerations, often referred to as the "*Phillips* factors," when determining whether to impose a duty. *See id.* at 149 (discussing applicable factors in duty determination) (citations omitted); *Pagayon*, 536 S.W.3d at 506 (discussing relevant factors to balance in duty determination in context of respondeat superior claims). This inquiry requires us to weigh "'the risk, foreseeability, and likelihood of injury . . . against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant.'" *Elephant Ins. Co., LLC*, 644 S.W.3d at 145 (quoting *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 182 (Tex. 2004)). In making this determination, we also consider if one party had superior knowledge of the risk or right to control the actor who caused the harm. *See id.* (citation omitted). Before us is the relevant risk of harm of a vehicle running over a pedestrian crossing a state highway adjacent to a premises owner's property the pedestrian just left.

14

Foreseeability must be examined in the context of both 1) the general danger and 2) the specific danger. *See id.* at 149. Although the general risk of getting hit by a car while crossing the road visiting or leaving an attraction may be reasonably foreseeable, it is true "only because the danger of getting hit by a car . . . exists regardless of the activity being undertaken at the time and regardless of the care one is taking for one's own safety." *Id.* at 150. The Wrights acknowledged that crossing the road could be dangerous and that they had a voiceover playing on their property advising visitors to be cautious, but the evidence also showed there had been no similar accidents involving people crossing FM 1960 at Wrights' Lights.

However, the risk of harm was equally foreseeable, if not more so, to the Joneses. *See id.* As the individuals crossing the road, the Joneses could view the traffic conditions on the roadway at that moment and decide when it was safe to cross. Therefore, they "were better situated to contemporaneously assess their physical safety and act accordingly." *See id.* This is evidenced by their testimony that they did not need anyone to tell them it was dark outside or to watch for cars; they looked both ways and decided when it was safe to cross the road. Moreover, that the Joneses did not see the truck coming until it was almost upon them and testified it did not have its lights on, undercuts the foreseeability of this specific danger, i.e., that a third-party driver over whom the Wrights had no control would be operating a motor vehicle in the dark without lights on as the Joneses crossed the

road. While the general danger of being hit by a car may have been foreseeable to the Joneses we cannot say it was foreseeable to the Wrights, particularly where the Wrights had no control over the driver or the Joneses.

The remainder of the *Phillips* factors, including social utility of the actor's conduct, the magnitude of burden to guard against the injury, and the consequences of placing the burden on the property owners, likewise weigh against the imposition of a duty. *See id.* at 149 (discussing *Phillips* factors). The Wrights' testimony established that they had no control over the public roadway and when they approached law enforcement for assistance with traffic control in the past, their requests were denied. They also had no control over where visitors parked, and even after the State placed signs along FM 1960, cars continued to park there, which required the State to place barricades along the road. The burden on private property rights and usage were we to recognize such a duty would be far-reaching with potential implications for anyone owning property along a public roadway who may have a group of visitors at any one time. It could apply in virtually any scenario where a group is gathered at property adjacent to a road, from non-commercial gatherings to any commercial activity imaginable. A fundamental question, and difficult one, is what would constitute "a crowd" and how should it be defined. In addition, we cannot say what an extension of such a duty would impose upon

16

premises owners and what social utility would be accomplished thereby. We decline the invitation to create another exception to the no-duty rule.

## D. Appellants' Authorities are Distinguishable

The Joneses argue that this Court's opinion in *Avery v. Alexander*, supports the existence of a duty in this case. *See* No. 09-08-00078-CV, 2008 WL 6740797, at *5 (Tex. App.—Beaumont Aug. 27, 2009, pet. denied) (mem. op.). *Avery* is distinguishable, as it did not involve the release of a purported hazard onto a roadway or the same exception to the general no-duty rule. Rather, it involved a tree falling on a neighbor's property and damaging a building during a hurricane. *See id.* at *1. Contrary to the case before us, and key to our analysis in that case, a defendant "voluntarily undertook to remedy the dangerous condition presented by the tree[]" and admitted he should have had the tree taken down before the hurricane. *See id.* at *5. That case involved a different exception than the one involved in this case and addressed the first "assumed duty" exception which is that "[o]ne who agrees to make safe a known dangerous condition of real property owes a duty of care." *See id.* (citations omitted). *Avery* acknowledged the common law rule that an owner or occupier of land abutting a highway has a duty to exercise reasonable care toward persons traveling on that highway but recognized it "*has been limited* to cases where a property owner or occupier negligently releases upon a public roadway 'an agency

17

that becomes dangerous by its very nature once upon the highway.'" *Id.* at *3 (quoting *Hirabayashi*, 977 S.W.2d at 707) (emphasis added).

The Joneses also rely on *Golden Villa Nursing Home, Inc. v. Smith*, for the proposition that people themselves crossing the highway can cause tortious liability for the premise owner from where the people originated. *See* 674 S.W.2d 343 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). This case is also inapposite, as it involved a patient in a nursing home who suffered from multiple health problems that caused "confusion and a tendency to wander[.]" *See id.* at 346. The resident escaped into the roadway, was hit by a motorcyclist, and the patient and motorcyclist were injured. *See id.* Both sued the nursing home. *See id.* The nursing home was charged with caring for the resident and knew of her propensity to escape to the adjacent roadway and involved the breach of a duty of medical care. *See id.* at 348. With respect to the motorcyclist on the highway, the court determined that the escaped patient "constituted a clear and present danger to travelers" and that the nursing home, by failing to keep the patient from wandering onto the roadway, breached a duty to the motorcyclist. *See id.* at 350. This falls into the recognized exception of introducing a dangerous condition upon the roadway. *See id.* (explaining that "the owner or occupant of premises abutting a highway must exercise reasonable care not to jeopardize or endanger the safety of persons using the highway"). Unlike the nursing home charged with caring for and securing its

18

patient, the Wrights were not responsible for the Joneses once they left the Wrights' premises nor did they control the third-party driver who hit Daylen. The evidence established that the Joneses decided when to leave after visiting the light show, decided where to park, checked for cars before crossing the road, and decided when and where to cross FM 1960. In *Golden Villa*, the danger was the escaped resident, whereas here, the danger was an inattentive driver.

Finally, the Joneses contend that a recent opinion from the Fourteenth Court of Appeals supports the existence of a duty in this case. *See HNMC, Inc. v. Chan*, 637 S.W.3d 919 (Tex. App.—Houston [14th Dist.] 2021, pet. filed) ("*Chan II*"). Chan, an HNMC employee, was hit by a third-party vehicle and killed walking across a public roadway at an abandoned crosswalk as she left work to return to her parked car. *See id.* at 926–27. HNMC owned the property on both sides of the road. *See id.* at 926. The Fourteenth Court of Appeals initially determined HNMC did not owe a duty since Chan was not killed on their property, and none of the four exceptions to the no-duty rule applied. *See HNMC, Inc. v. Chan*, No. 14-18-00849-CV, 2020 WL 2832780, at *10 (Tex. App.—Houston [14th Dist.] May 28, 2020, pet. filed) (mem. op.) ("*Chan I*") *withdrawn on reconsideration en banc Chan II*, 637 S.W.3d 919. On rehearing in *Chan II*, the Houston court reversed course and concluded HNMC owed Chan a duty by going through a balancing of factors rather than determining whether one of the four recognized exceptions applied to the

19

general no-duty rule. *See Chan II*, 637 S.W.3d at 929–34. *Chan II* relied on facts distinguishable from *Hirabayashi*, *Cabrera*, and this case. *See id.* at 934–35. One important fact in the Houston court's determination was that HNMC owned the property on both sides of the street. *See id.* at 935. The court reasoned that fact in conjunction with the pedestrians' use of an abandoned crosswalk, "influenced how pedestrians and vehicles interacted with each other at the abandoned crosswalk." *See id.* These facts are completely absent from our record.

Likewise, Chan was an employee of the hospital and clearly an invitee. *See id.* at 926. "'An invitee is one who enters the property of another with the owner's knowledge and for the mutual benefit of both[,]'" and involves a "shared business or economic interest." *Catholic Diocese of El Paso v. Porter*, 622 S.W.3d 824, 829 (Tex. 2021) (quoting *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 202 (Tex. 2015)). A licensee, in contrast, "'is a person who goes on the premises of another merely by permission, express or implied, and not by any express or implied invitation.'" *See id.* (quoting *Tex.-La. Power Co. v. Webster*, 91 S.W.2d 302, 306 (Tex. 1936)). Despite the Joneses' allegation in their Petition that the Wrights owed them a duty as invitees, the record does not support their allegation, as the testimony conclusively established the Joneses and other visitors did not economically benefit the Wrights, so the law imposes the lesser duty associated with licensees. *See id.* at 832. Accordingly, *Chan II* is also inapposite.

20

The evidence further shows the presence of Herndon's truck on the road was not obscured solely by Herndon's failure to use her lights. Since the Joneses did not pay to attend the light show, they were merely licensees while on the Wrights' property. *Harrod v. Grider*, 701 S.W.2d 937, 938 (Tex. App.—Beaumont 1985, no writ). Therefore, as the Wrights' guests, the Wrights owed their social guests "only the duty not to injure [them] by wilful, wanton, or gross negligence." *Id*. The evidence shows that the Wrights didn't know that Herndon's truck was traveling toward their property when the Joneses decided they were going to leave. Nor did the Joneses inform the Wrights that they were leaving. Simply put, the Wrights didn't have a duty to warn the Joneses of the risks of crossing FM 1960 when the risks of crossing the road were "within the ordinary knowledge common to the community." *See Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 388 (Tex. 1991). Given the location of Daylen's injury, a public road, the Joneses have failed to demonstrate that the Wrights owed them a duty of care.

Because the dangerous condition exception to the general no-duty rule for property owners adjacent to a public roadway does not apply in this case, and a balancing of factors approach does not support imposing a new duty, we overrule the Joneses' sole issue. *See Hirabayashi*, 977 S.W.2d at 707 (analyzing the four recognized exceptions to the no-duty rule); *see also Elephant Ins.*, 644 S.W.3d at 145 (balancing factors to determine the existence of a duty). The Wrights

21

conclusively negated the duty element of the Joneses' claims, and the trial court properly granted summary judgment. *See* Tex. R. Civ. P. 166a(c); *Energen Res. Corp.*, 642 S.W.3d at 514.

## IV. Conclusion

Having overruled the Joneses' sole issue, we affirm the trial court's judgment.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on October 19, 2022
Opinion Delivered March 9, 2023

Before Golemon, C.J., Horton and Johnson, JJ.